SMITH & GOLDSTON *v.* THOMAS C. PEACE *et als.*

BOND.   *To indemnify against incumbrance.   Who may enforce it.*   A court of equity will make the party immediately liable who is or may be ultimately made liable.

CASE.   At a chancery sale of the lands of W. H. Peace, deceased, T. C. Peace became purchaser, and left unpaid part of the purchase money, for which a lien was retained; he sold the land to Burwell by title bond, and held B's notes for the purchase money.   Burwell filed a bill charging the existence of the incumbrance, and praying to have the collection or transfer of his notes enjoined until the incumbrance should be removed.   To obviate this difficulty Peace executed to Burwell a bond with Golliday and Tarver as sureties, binding him to make Burwell a title free from incumbrance, when it could be ascertained by proper account the balance of purchase money due the Peace heirs, and to indemnify Burwell from loss.   Burwell abandoned his bill, and the entire purchase money due from him to Peace, has either directly or indirectly been satisfied.   Burwell sold the land by title bond to Smith and Goldston, receiving payment in full.   The land has since been held liable for a balance of unpaid purchase money due from T. C. Peace to the Peace heirs, and Smith and Goldston have paid off the same.   *Held*, that upon a bill filed for the purpose, making Burwell also defendant, they have the right to recover the sum thus paid directly from Peace and his sureties, Golliday and Tarver, upon the bond referred to.

FROM WILSON.

Appeal from the Chancery Court at Lebanon.   H. H. LURTON, Ch.

JORDAN STOKES for complainants.

TARVER & GOLLIDAY for defendants.

McFARLAND, J., delivered the opinion of the court.

Smith *v.* Peace.

The material facts as presented by the statements submitted by defendant's counsel are as follows:

In March, 1858, under a decree of the Chancery Court at Lebanon, the lands of W. H. Peace, deceased, were sold for partition. Thos. C. Peace, one of the heirs, became a purchaser of a portion, but did not pay the whole of the purchase money, the amount to be paid by him depending upon an account between the parties in interest, and which was not taken until long afterward. Thos. C. Peace had also bought, upon a credit, a small tract of land known in this record as the Carson land. In December, 1858, he sold portions of each of these tracts to one Burwell, making him a bond for title. On the 6th day of April, 1859, Burwell filed his bill against Peace, charging that he could make no title to the land, that he had not paid the original purchase money, and was in an insolvent condition, and praying that Peace might be enjoined from trading off the notes given him by Burwell, that the notes might be attached, etc. On the 4th day of June, 1860, Peace, to put an end to these proceedings, executed to Burwell a bond of indemnity to be void if he should cause to be made to Burwell a good and sufficient title, discharged of all liens for the purchase money upon the settlement of the estate of W. H. Peace, "but otherwise to be held as an indemnity to make said E. W. Burwell whole for such loss and damage as he may incur by reason of the failure on the part of the said T. C. Peace to comply with said obligation and make title." And

the bond was further conditional upon the making to said Burwell by said Peace of a good and sufficient title to the Carson land on or by the 1st day of January, 1861, free from the liens for the purchase money then outstanding. Golliday and Tarver became the sureties upon this bond.

On the 13th day of November, 1862, Burwell sold all the land he had bought from Peace to Smith and Goldston, executing a bond for title, and providing that it should be void if he should make to them or "their heirs or assigns a good and sufficient title in fee simple with general warranty to said lands on the making of the last payment for said tract of land." The bond recites that the last payment will be due six months from the 13th day of November, 1862. Afterward, exactly when the record does not disclose, but perhaps in 1863, certainly during the war, Smith and Goldston paid Burwell the balance of the purchase money in confederate treasury notes, and, as they allege in their bill, demanded a deed, but one was never made, either then or afterward. Burwell received the confederate money with great reluctance, and it afterward in a great measure perished on his hands.

At the close of the war in 1865, finding that his land was a total loss, he threatened to sue for a rescission, and thereupon Smith and Goldston, becoming alarmed, and to strengthen their title, proposed to Thos. C. Peace to file his bill against Burwell for his unpaid purchase money, agreeing to have the matter attended to at their cost and by their solicitor. Ac-

cordingly, on the 13th of September, 1866, such bill was filed against Smith, Goldston and Burwell. Burwell was then residing in Virginia, and made no defense. Smith and Goldston answered, and among other things admitted that they were bound to pay Peace the balance of the purchase money due him. In the end it appeared that there remained due Peace from Burwell, as of December 3, 1866, $553.40, but that there was due from Peace on the Carson land $1,020.60, which had been paid by Smith and Goldston, and that something, how much could not then be ascertained, was due from him on the Peace land. It was thereupon ordered that Peace should be credited by the $553.40 due from Burwell, and charged by the $1,020.60 due from him to Smith and Goldston on the Carson land, leaving thus a balance due Smith and Goldston of $467.28 on the Carson land. And the court decreed that Smith and Goldston were entitled to be subrogated to all of Burwell's rights and equities against Peace. Neither Golliday nor Tarver were parties to that bill. Afterward, and on the 27th of April, 1872, Smith and Goldston filed the bill now before the court, which they style an "original and cross-bill," to set aside the decree of December 3, 1866, and to charge Golliday and Tarver on their bond with the entire amount which Smith and Goldston had been forced to pay to perfect their title. They charged that nothing was in fact due Peace from Burwell December 3, 1866, and that the decree was obtained by fraud, and they further charged that pending the proceedings on Peace's bill they had been un-

able to find the bond of Golliday and Tarver, although they had made diligent search for it.

Burwell was not made a party to this bill. Golliday and Tarver demurred on several grounds, two of which alone need to be noticed:

1. Burwell was a necessary party.

2. The remedy, if any, is at law.

The Chancellor sustained the demurrer on the first ground, but complainants undertaking to amend in this particular, the demurrer was overruled.

On the 27th of June, 1873, Burwell's administrator was made a party, but the record does not disclose the date of Burwell's death. No relief was sought specifically against him, and in fact no decree was rendered against him. Tarver and Golliday, in their answer, set up many defenses, and rely upon the statute of limitations. Some proof was taken, there being not much serious conflict. I shall only call attention to the fact that Peace proved that by an agreement entered into between him and Burwell, the latter undertook to pay to the estate of W. H. Peace the balance of the purchase money due from T. C. Peace. This amount appeared to be, with costs, interest, etc., $1,154.57, as of November 3, 1875, and for this sum the Chancellor rendered a decree against Golliday and Tarver, declining to set aside the decree of December 3, 1866. From this decree Golliday and Tarver have appealed to this court.

The complainant's counsel do not insist in argument upon any other relief than was obtained by the Chancellor's decree. Are the complainants then enti-

tled to the relief granted by the Chancellor, that is, a decree against Tarver and Golliday as sureties of Thos. C. Peace, for the amount which the complainants have been compelled to pay, as purchase money to the estate of W. H. Peace, deceased, to discharge the land purchased by them from Burwell, from the lien reserved thereon; all other relief was denied by the Chancellor?

The argument mainly relied upon by the defendant's counsel is, that the bond of Peace, Golliday and Tarver of the 4th of June, 1860, was a mere personal covenant between said parties and Burwell, to whom it was executed, and its benefits did not pass with the land when sold by Burwell to the complainants, Smith and Goldston. Nor has the bond been assigned to complainants, either directly or by operation of law, and they therefore cannot sue upon it in any court. Furthermore, this bond did not bind the sureties absolutely to remove the prior incumbrance upon the land, but only to indemnify Burwell against loss, and as he has suffered no loss there is no liability.

An ordinary bond for title to land does not convey an interest in the land, and is regarded as a mere personal covenant, and the bond in question is of a similar character; but successive purchasers of land by title bond are, in equity, regarded as the owners, and the obligations of a title bond may be transferred by mere 'assignment and delivery of the bond by the obligee to another purchaser, as has been held in this State. *Wilburn* v. *Spofford*, 4 Sneed 698.

The complainants then having purchased from Burwell by title bond, and paid him for the land, is undoubtedly entitled to the benefit of any contract for title which Burwell may have with any previous vendor. That is to say, if Burwell be entitled to a conveyance from a previous vendor, he having sold the land to the complainants and received payment, and bound himself to convey to them, they may call for the title directly from such previous vendor.

The fair meaning of the bond in question is, that Peace was bound to make to Burwell a title free from incumbrance when it should be ascertained by the proper account how much of the purchase money was still owing to the other Peace heirs. That is, he was to pay off or satisfy this prior incumbrance, for there was no other way in which he could make Burwell a title free from the incumbrance; or if Burwell was compelled to pay it, then the obligation of the bond was to indemnify him by refunding to him the money he might thus be compelled to pay, as there would be no other mode of indemnifying him. It was for this purpose Burwell filed his bill. And upon the faith of the bond he agreed to abandon his bill and go on with the payment of the purchase money due from him to Peace, and Peace has directly or indirectly realized the full amount due from Burwell on his purchase. Peace has not complied with the bond by making to Burwell a title free from this incumbrance. It is true Burwell is not asking for the relief, nor has he been compelled to pay off the prior incumbrance, and therefore in that sense he has

not suffered.   He has not suffered because he has sold the land and received payment.   But he or his representative is liable to the complainants.   The contract between them remained executory, and undoubtedly the complainants would be entitled to a decree against Burwell, compelling him to discharge the prior incumbrance and make them a title.   As between complainants and Burwell, the latter was first bound to pay off this prior incumbrance.   The complainants having paid it, are entitled to the benefit of the security held by Burwell, upon the principle that a party secondarily liable, paying off a liability is entitled to the benefit of the securities held by the party primarily liable.

We think this cause properly falls within the principle laid down in Story Eq. J., sec. 1250: "A court of equity will make the party immediately liable who is or may be in law or equity made ultimately liable. Thus, for example, if a chose in action not negotiable at all, or not negotiable by the local law, except to create a legal right of action between the immediate endorsee or assignee, should be passed to a remote assignee, the latter would be entitled in equity to sue the party who was ultimately or circuitously liable for the debt to the antecedent holder or creditor."

Here Burwell was bound to the complainant to remove the prior incumbrance and make them a title, or if they were compelled to pay off the incumbrance, Burwell would be bound to indemnify them.   But Peace and his sureties on his bond were bound to

38

Burwell by the same measure of obligation, and complainants being the parties ultimately entitled, and Peace and his sureties ultimately liable, a direct recovery does justice to all. True, the bond in this case has not been transferred to the complainants, yet in equity they are the parties ultimately entitled to its benefits. The complainants having bought the land from Burwell, and paid him in full and received his bond, have the right to call upon him for a valid and unincumbered title, and for the enforcement of all the obligations which he holds upon others, by means of which an unincumbered title is to be obtained. Though the bond in question is not strictly a covenant running with the land, yet we think in equity complainants are entitled to its benefits, and Burwell's representative has not appealed from the decree of the Chancellor substituting complainants to the rights of Burwell under the bond.

We think the case of the *Nashville Bank* v. *Grundy & Hays*, Meigs' R., 256, relied upon by defendant's counsel, is not in point. In that case Hays agreed for a certain consideration received from Grundy, to take the latter's shoes in regard to certain liabilities claimed by the bank and others against Grundy, with a right to contest the liabilities. It was held that the bank had no right to reach the consideration paid Grundy to Hays as a trust fund, simply because such was not the contract or agreement of the parties. In the present case it could not have been understood that the obligation of Peace and his sureties was **to** be cancelled upon a sale of the land by Burwell.

Smith *r.* Peace.

We think it clear that the relief is not barred by the statute of limitations. As between the obligors in the bond and . Burwell, sufficient time has not elapsed since the time fixed by the bond for its performance. As between Burwell and the complainants, there is no statute barring the right of complainants to hold Burwell as trustee of the legal title for them, or of any remedies by which it is obtained. Besides, his representative has not pleaded the statute or appealed from the decree. It is said that Peace proves that Burwell was to pay off the purchase money due the Peace heirs. This could only mean that he was to pay it out of the amount due from him to Peace. This not having been done, and Peace having otherwise realized the full amount due from Burwell, cannot, on this ground, object to performing the terms of his bond.

The other positions taken in argument have been considered, but in our opinion no sufficient answer to the relief sought has been shown, and the decree will be affirmed with costs.